IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-227-3 |
| MIGUEL GONZALEZ | : | |

**GOVERNMENT'S CHANGE OF PLEA MEMORANDUM**

## I.      BACKGROUND

Defendant Miguel Gonzalez is charged in an indictment with carjacking and aiding and abetting, in violation of 18 U.S.C. §§ 2119 and 2 (Count One); kidnapping and aiding and abetting, in violation of 18 U.S.C. §§ 1201(a)(1) and 2 (Counts Two and Three); using, carrying, and brandishing a firearm during and in relation to a crime of violence and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count Four); possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count Five); possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Six); and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (Count Seven). The defendant has notified the government through his counsel that he wishes to plead guilty to the indictment.

## II.      APPLICABLE STATUTES AND ESSENTIAL ELEMENTS OF THE OFFENSES

Count One: Carjacking.

To obtain a conviction under 18 U.S.C. § 2119, the government must prove the following elements beyond a reasonable doubt:

1. That the defendant intended to cause death or serious bodily harm;

2. That the defendant took, or attempted to take, a motor vehicle;

3. That the vehicle had been previously transported, shipped, or received in interstate or foreign commerce;

4. That the defendant took the vehicle from the person or presence of another; and

5. That the defendant did so through force and violence or intimidation.

*See United States v. Augustin*, 376 F.3d 135, 139-140 (3d Cir. 2004); *see id.* at 137, 140 (holding that the first element is established if a defendant pins down a victim-driver and points a gun at him).

Counts Two and Three: Kidnapping.

To obtain a conviction under 18 U.S.C. § 1201(a), the government must prove the following elements beyond a reasonable doubt:

1. That the defendant unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away a person;

2. That the defendant holds the victim for ransom or reward or otherwise; and

3. That the kidnapping involved one of a list of jurisdictional nexuses listed in 18 U.S.C. § 1201.

*United States v. Rodriguez*, No. 17-1683, 2018 WL 3868040, at *2 (3d Cir. Aug. 14, 2018) [1]

Count Four: Carrying, using and brandishing a firearm during and in relation to a crime of violence.

To obtain a conviction under 18 U.S.C. § 924(c)(1)(A)(ii), the government must prove the following elements beyond a reasonable doubt:

1. That the defendant committed the crime of carjacking as charged in One of the indictment;

2. That during and in relation to the commission of that crime, the defendant knowingly carried, used and brandished a firearm; and

3. That the defendant carried, used and brandished the firearm during and in relation to the crime of carjacking. During and in relation to means that the firearm must have

---

[1] Where the court stated that a person is guilty of federal kidnapping if: (1) he unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away a person; (2) he holds the victim for ransom or reward or otherwise; and (3) the kidnapping involved one of a list of jurisdictional nexuses listed in 18 U.S.C. § 1201.

had some purpose or effect with respect to carjacking. The firearm must have at least

facilitated or had the potential of facilitating carjacking.

*See* Third Circuit Model Jury Instruction 6.18.924B.

Count Five: Possession with intent to distribute controlled substances.

To obtain a conviction under Section 841(a)(1), the government must prove each of the following elements beyond a reasonable doubt:

1. That the defendant possessed a mixture or substance containing a controlled substance;

2. That the defendant possessed the controlled substance knowingly or intentionally;

3. That the defendant intended to distribute the controlled substance; and

4. That the controlled substance was fentanyl, and/or cocaine, and/or cocaine base (crack).

Third Circuit Model Criminal Jury Instruction § 6.21.841A

Count Six: Possessing a firearm in furtherance of a drug trafficking crime.

To obtain a conviction under 18 U.S.C. § 924(c)(1)(A)(i), the government must prove the following elements beyond a reasonable doubt:

1. That the defendant committed the crime of possession with intent to distribute controlled substances as charged in Count Five of the indictment; and

2. That the defendant knowingly possessed a firearm in furtherance of this crime.

*See* Third Circuit Model Jury Instruction 6.18.924A.

Count Seven: Possession of a firearm by a felon.

To obtain a conviction under Section 922(g)(1), the government must prove beyond a reasonable doubt:

1. The defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year;

2. That after this conviction, the defendant knowingly possessed a firearm;

    3.        The defendant was aware that he had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

    4.        That the firearm was in or affecting interstate commerce.

Third Circuit Model Criminal Jury Instruction § 6.18.922G; *see also United States v. Higdon*, 638 F.3d 233, 239-40 (3d Cir. 2011); *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000); amended to comply with *Rehaif* v. *United States*, 139 S. Ct. 2191 (2019).

<u>Aiding and Abetting</u>

To obtain a conviction under 18 U.S.C. § 2, the government must prove the following elements beyond a reasonable doubt:

1. That a defendant committed the offense charged by committing each of the elements of the offense charged;

2. That the defendant knew that the offense charged was going to be committed or were being committed by the other defendant;

3. That the defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging, the other defendants in committing the specific offense charged and with the intent that the defendants commit that specific offense; and

4. That the defendant performed an act in furtherance of the offense charged.

*See* Third Circuit Model Jury Instruction 7.02

<u>Aiding and Abetting the carrying, using and brandishing a firearm during and in relation to a crime of violence.</u>

To obtain a conviction under of 18 U.S.C. § 2, because he aided and abetted in committing the offense of carrying, using and brandishing a firearm during and in relation to a crime of violence the government must prove the following elements beyond a reasonable doubt:

1. That the defendant was an active participant in the offense of carjacking as charged in the indictment. To prove that the defendant was an active participant in the offense, the government must prove that the defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging another defendant

in committing the offense of carrying, using and brandishing a firearm during and in relation to a crime of violence;

2. That another defendant committed the offense of carrying, using and brandishing a firearm during and in relation to a crime of violence by committing each of the elements of that offense. Another defendant need not have been charged with or found guilty of the offense, however, as long as the government proved beyond a reasonable doubt that he committed the offense; and

3. That the defendant knew in advance of the carjacking that another defendant would use and carry a firearm during and in relation to the carjacking, that the defendant decided thereafter to continue to participate in the carjacking.

*See* Third Circuit Model Jury Instruction 6.18.924C

## III.    MAXIMUM PENALTIES

Count One (carjacking and aiding and abetting): a term of imprisonment of 15 years, a term of supervised release of three years, a fine of $250,000, and a special assessment of $100.

Counts Two and Three (kidnapping and aiding and abetting): up to life imprisonment, a term of supervised release of five years, a fine of $250,000, and a special assessment of $100.

Count Four (using, carrying and brandishing a firearm during and in relation to a crime of violence and aiding and abetting): up to life imprisonment, a 7-year mandatory minimum term of imprisonment consecutive to any other sentence imposed, a term of supervised release of five years, a fine of $250,000, and a special assessment of $100.

Count Five (possession with intent to distribute controlled substances): a term of imprisonment of 20 years, a mandatory minimum term of supervised release of three years up to lifetime supervised release, a fine of $1,000,000, and a special assessment of $100.

Count Six (possession of a firearm in furtherance of a drug trafficking crime): up to life imprisonment, a 5-year mandatory minimum term of imprisonment consecutive to any other sentence imposed, a term of supervised release of five years, a fine of $250,000, and a special assessment of $100.

Count Seven (possession of a firearm by a felon): a term of imprisonment of 15 years, a term of supervised release of three years, a fine of $250,000, and a special assessment of $100.

Total Maximum and Mandatory Minimum Penalty: life imprisonment, a 12-year mandatory minimum term of imprisonment consecutive to any other sentence imposed, a mandatory minimum term of supervised release of three years up to lifetime supervised release, a $2,500,000 fine, and a $700 special assessment. Full restitution of as much as $24,850 shall be ordered. Forfeiture of the firearm and all proceeds from offense also may be ordered.

## IV.    **FACTUAL BASIS FOR THE PLEA**

If this case were to proceed to trial, the government would prove the following facts, among others, through witness testimony and exhibits. This memorandum sets forth only the essential facts that would need to be proved to establish the elements of the offenses charged.

In May 2024, victim D.P.[2], listed skills machines for sale on Facebook marketplace.  On June 2, 2024, D.P. communicated with a party named "JONH MACH" through a Facebook Marketplace group named "John Skill Machine." D.P. agreed to sell ten skills machines to "Jonh Mach".  Later that day D.P. received a $400.00 deposit through Zelle, a money exchange application, from a Zelle account with the username "Will Mercado."

On June 3, 2024, D.P. and R.G. traveled to Philadelphia in a rented U-Haul truck, with the ten skills machines to finalize the sale, the approximate value of the machines was $24,850.

---

[2] Both victims D.P. and R.G. are known to law enforcement.

When D.P. and R.G. arrived in Philadelphia, they met with co-defendant Jose Polanco-Lopez and co-defendant Christopher Fernandez, who identified themselves as the buyers.  Polanco-Lopez and Fernandez, arrived in a red Chevy Equinox, near the intersection of Stanwood Street and Farnsworth Street. This meeting was captured on video from a nearby residence. Polanco-Lopez asked D.P. and R.G. to follow him to a location later determined to be the 4700 block of Deveraux Street to drop off three of the skills machines and get the rest of money owed for the machines.

D.P. and R.G. followed the defendants and after arriving were told to park their U-Haul truck and exit. After D.P. exited the U- Haul he saw a black Jeep Cherokee pull beside the Red Equinox.  Defendant Miguel Gonzalez and co-defendant Edwin Aponte, wearing ski masks, dressed in black clothing and armed with handguns exited the Jeep. The defendants zip tied D.P.'s and R.G.'s hands behind their backs and placed bags over their heads. A firearm was held to D.P.'s back. The defendants then took a cell phone, wallet, and necklace from them before placing them in the black Jeep Cherokee.

After what D.P and R.G. described as a brief ride they were told to exit the vehicle and walk away. After hearing the vehicle drive away, D.P. removed the bag from his head and realized he was in the middle of a cemetery.  D.P. observed the black Jeep Cherokee driving off. The U-Haul, the ten skills machines, and R.G.'s lawfully possessed firearm[3] were stolen. During the carjacking/kidnapping D.P. was struck in the head by co-defendant Aponte with a hard object, believed to be a firearm.

The black Jeep was captured on video entering the North Cedar Hill Cemetery where D.P. and R.G. were dropped off at approximately 4:42 pm and then exiting the cemetery at approximately 4:48 pm. The black Jeep was then observed returning to Kensington Avenue and

---

[3] D.P.'s firearm, a Glock 43X bearing serial Number BYWX610, was in the vehicle.

parking on Hart Lane, at approximately 5:07 pm. Aponte was seen on camera exiting from the driver seat. Gonzalez was  shown exiting passenger side of the Jeep. Camera footage captureed Gonzalez walking down Hart Lane and entering his residence at 1851 Hart Lane. Camera footage also captured Polanco-Lopez, Fernandez, Aponte, and Gonzalez talking on the street multiple times at Kensington Ave and Hart Lane, after the robbery.

Call detail records and cell site analysis place phone numbers associated with defendants Aponte, Polanco-Lopez, and Peralta in the area of the initial meet at Farnsworth Street in the relevant time frame.

Call detail records and cell site analysis place phone numbers associated with defendants Aponte and Polanco-Lopez in the area of 4702 Deveraux Street in the relevant time frame.

On July 3, 2024, a search warrant was executed on Miguel Gonzalez's residence, 851 Hart Lane 2nd FL. During the search one skills machine was recovered from the foyer.  Several items belonging to victim D.P., including a Massachusetts Driver's License (in Gonzalez's bible), a Citizen's bank card, and a Capitol Bank card were recovered from the master bedroom. Additionally, nine cellphones, an iPad, a Winchester, Model 9422 lever action rifle caliber 22 Long Rifle, bearing serial number F94949 loaded with ten rounds (recovered from under Gonzalez's bed), thirty-seven live rounds of caliber 22 Long Rifle ammunition, eleven rounds of .380 auto ammunition, fourteen rounds of 9mm Luger ammunition, two 9mm magazines, and narcotics[4] were recovered. The narcotics were tested by Forensic Scientist 3 Jozlyn Robinson of the City of Philadelphia Police Department Office of Forensic Science Chemistry Unit. The

---

[4]One hundred and sixty (160) packets of white powder in blue glassine envelopes stamped " PECO" (in eleven tan rubber bands), twenty five (25) packets of white powder in blue glassine envelopes stamped " Frozen" (in two tan rubber bands), twenty (20) pink plastic vials with white chunky substance , three (3) purple caps with white powder, two (2) Fentanyl patches.

results show positive tests for the following narcotics: 160 packets (9.79 grams) fentanyl labeled "PECO"; 25 packets (1.507 grams) fentanyl labeled "Frozen"; 20 flip top containers (one item tested weight 0.047 +/- 0.004 gram: no total weight because it was under the state charging threshold) cocaine; three purple flip top containers (one item tested weight 0.075 +/- 0.004 gram: no total weight because under state charging threshold) cocaine base, and two fentanyl patches.

Jennifer Chambers, who is the manager of the Vehicle Information Group, responsible for the Vehicle Manufacturers shipping and assembly records for the National Insurance Crime Bureau (NICB) provided an affidavit indicating that records reflect that the 2021 Jeep Cherokee (VIN 1C4RJFAG1MC709429) involved in the carjacking/kidnapping was assembled as a new vehicle at the Detroit, MI plant and shipped 04/20/21 to Dealer 44413 – Family Jeep Chrysler Dodge Ram, 6735 Essington Ave, Philadelphia, PA 19153.  Absent a stipulation she would be called to testify to the same. Thus, by virtue of it being located in Pennsylvania, the vehicle used in the kidnapping traveled in and affected interstate commerce.

Jennifer Chambers, who is the manager of the Vehicle Information Group, responsible for the Vehicle Manufacturers shipping and assembly records for the National Insurance Crime Bureau (NICB) provided an affidavit indicating that records reflect that the 2010 Ford Econoline E450 (VIN 1FDXE4FS1ADA91995)(U-Haul Truck) that was stolen during the carjacking was assembled as a new vehicle at the Avon Lake, OH assembly plant and shipped 08/16/10 to Dealer 71B771 – Don Sanderson Ford Lincoln, 6400 Norh 51st Avenue, Glendale, AZ 85301.  Absent a stipulation she would be called to testify to the same. Thus, by virtue of it being located in Pennsylvania, the vehicle stolen in the carjacking traveled in and affected interstate commerce.

The evidence shows that cellular devices were used in committing these crimes proving

the defendants "used any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense."

The Winchester, Model 9422 lever action rifle caliber 22 Long Rifle, bearing serial number F94949 was examined by Police Officer Raymond Andrejczak, Jr. of the City of Philadelphia Police Department Office of Forensic Science Firearms Identification Unit and was found to be operable.  It therefore meets the definition of a firearm under 18 U.S.C. § 921(a)(3). Special Agent Timothy Flanagan with the Bureau of Alcohol, Tobacco, Firearms, and Explosives examined the firearm and determined that it was manufactured by Winchester in New Haven, Connecticut and recovered in the Commonwealth of Pennsylvania and thus traveled in interstate commerce.

At the time of his arrest and the recovery of the firearm, the defendant had previously been convicted in the Court of Common Pleas, Bucks County, of a felony punishable by a term exceeding one year under docket number CP-09-CR-0002598-2013. The defendant was sentenced to a term of 5 to 10 years' imprisonment.

During a post arrest *Mirandized* interview Gonzalez admitted that he participated in the carjacking and kidnapping and that firearms were used.

Additionally, if the case, went to trial an expert in drug trafficking would testify that based on a review of the evidence the quantities involved were consistent with possession with intent to deliver and that the firearm recovered at the time of the search warrant was used in furtherance of a drug trafficking crime.

V.    **PLEA AGREEMENT**

The parties have executed a plea agreement, that will be presented to the Court during a hearing regarding entry of the guilty plea. The agreement includes a supplement to be filed

under seal.

## VI.     <u>CONCLUSION</u>

The government requests that the Court conduct a hearing under Federal Rule of

Criminal Procedure 11 and if warranted then accept the defendant's plea of guilty.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Nicholas E. Freeman*
NICHOLAS E. FREEMAN
Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Change of Plea Memorandum has been served by email on:

Elizabeth Toplin, Esquire
Elizabeth_Toplin@fd.org

*/s Nicholas E. Freeman*
NICHOLAS E. FREEMAN
Special Assistant United States Attorney

DATED:  January 6, 2026.